Kenneth Jackson BAREFOOT, #10943–82,
Petitioner,

v.

STATE OF NORTH CAROLINA, Major
Fred Ross, Odom Prison, Respondent.

Civ. No. 1889.

United States District Court
E. D. North Carolina,
Raleigh Division.

Sept. 30, 1966.

Kenneth Jackson Barefoot, pro se.

T. Wade Bruton, Atty. Gen., of N. C., by Theodore C. Brown, Jr., Staff Attorney, Raleigh, N. C., for respondent.

## OPINION and ORDER

LARKINS, District Judge.

### Summary

This cause comes before this Court on a petition for a writ of habeas corpus filed by a State prisoner in forma pauperis pursuant to the provisions of Title 28 U.S.C.A. Sec. 2254. Issues were joined upon respondent filing answer and Motion to Dismiss.

Petitioner claims that his rights as guaranteed by the Constitution of the United States were violated in the following particulars:

(1) that an arrest warrant was never issued before or after arrest,

(2) that petitioner was interrogated without the advice of counsel and was not allowed to see his friends or relatives,

(3) that he was not allowed to be represented by counsel at the coroner's inquest and was not allowed to cross-examine witnesses at this inquest,

(4) that petitioner was misinformed of the evidence against him leading to a plea of guilty to a lesser offense,

(5) that petitioner was denied a fair and speedy trial in that he was held in custody for a period of nine months awaiting trial.

### Findings of Fact

Petitioner is presently incarcerated in Odom Prison, Jackson, North Carolina, serving a term of twenty-five to thirty years on a plea of guilty to second degree murder (September 1965 Term of the Superior Court of Harnett County, Case No. 3902).

Petitioner was taken into custody at 4:20 A.M. on January 16, 1965 by police officers of the City of Dunn, North Carolina, in an alley behind the police station in that city. Petitioner was in an intoxicated condition at this time and was firing a pistol into the air. The officers searched him and found in his pocket seven empty cartridges, a wallet belonging to one Roy Lee, and two sets of keys; one belonging to Lee's car and the other to his place of business. The officers also found a large amount of change. After finding the property of Roy Lee in the possession of the petitioner, the officers went to Roy Lee's place of business and found him lying dead on the floor. Outside the business the officers found footprints in the snow which, when compared with the footprints of the petitioner, matched.

Petitioner was interrogated for a period of about four and one-half hours without seeing or conferring with counsel. He does not allege, however, that he requested to see counsel. Certain relatives of the petitioner asked to see the petitioner during this time but were not allowed to do so. His brother, who had been called by the police officers when petitioner had been taken into custody in connection with the Lee murder, was allowed to see him about 9:00 o'clock that same morning.

Petitioner was taken to the coroner's inquest and, upon a finding of probable cause, was bound over to the Grand Jury which found a true bill charging him with first-degree murder at the March 1965 Term.

After the indictment had been returned against the petitioner, his relatives went to see Mr. Robert C. Bryan and Mr. J. Shepherd Bryan, both able and respected members of the Harnett County Bar and requested that they defend petitioner, which they agreed to do. Subsequently, the two attorneys were appointed by the State of North Carolina to defend him.

The attorneys had the petitioner committed to Dorothea Dix Hospital in Raleigh, North Carolina, for a period of

ninety days for observation. After petitioner was returned from the hospital, his attorneys asked the Court if the case could be continued, and this continuance was allowed. Petitioner raised no objection to the case being continued.

Petitioner was brought to trial on September 29, 1965, and upon the call of his case for trial he entered a plea of guilty to second-degree murder upon the advice of his attorney, who strongly believed that the state could have convicted the petitioner of first-degree murder. This finding was based upon the testimony of the petitioner's attorney at the Post-Conviction Hearing held in the Superior Court of Harnett County, which denied all requested relief.

### Conclusions of Law

■ First, it is necessary to determine if the plea of guilty to second-degree murder was voluntarily and freely made so as to waive all constitutional defects, if any, occurring prior to the plea. This Court does not mean to imply that the arrest was illegal or that the lack of a warrant vitiated the validity of the trial, but because there was a plea of guilty voluntarily and freely made, these questions are now rendered moot. Petway v. Stallings, 248 F.Supp. 991 (E.D.N.C., 1965), Cerniglia v. United States, 230 F. Supp. 932 (N.D.Ill.1964).

■■ Petitioner's plea of guilty was voluntarily and freely made. He was on trial for the offense of first-degree murder which is a capital crime in North Carolina. His attorney testified at the Post-Conviction Hearing that he went to see the petitioner often while the latter was in jail and advised him that he should enter a plea of guilty to second-degree murder because counsel felt that the State, believing the petitioner was not as intoxicated as he claimed, could procure a conviction of first-degree murder. The attorney stated at the hearing that the petitioner was reluctant because he was not sure what actually happened that night due to his intoxicated condition. Petitioner himself admitted that his plea was voluntarily made except for the fact that he was misinformed by his attorney of the State's evidence.

■ Petitioner complains that he was misinformed of the evidence that the State had against him. Instead of misinformation, it is a case of his not understanding the purpose of the introduction of evidence after his plea of guilty. Petitioner does not seem to realize that the State was not required to offer all of their evidence but only so much as would be helpful to the judge presiding at the trial in sentencing the defendant-petitioner. Petitioner, in effect, is alleging that he did not have adequate representation of counsel. At his Post-Conviction Hearing he stated that his attorney informed him that the State could prove that the murder weapon was stolen, that the petitioner had stolen the gun, and that the State had petitioner's fingerprints taken from the scene of the crime. However, the State did not introduce these facts into evidence at the trial and sentencing. Defense counsel said that he did not recall making these statements. Assuming for the purpose of argument that the attorney did make the alleged statements, it does not appear that these statements, if made, were made with the purpose to trick the defendant and these misstatements would not be a ground for granting a writ of habeas corpus since a mere mistake of counsel cannot be reviewed in such a petition except where an extreme case is shown, which is not the case here. Baker v. Bailey, 246 F.Supp. 131 (E.D. N.C.1965), Jones v. Huff, 80 U.S.App. D.C. 254, 152 F.2d 14 (1945). As stated in Scott v. United States, 334 F.2d 72, 73 (6th Cir., 1964), certiorari denied 379 U.S. 842, 85 S.Ct. 81, 13 L.Ed.2d 48, "only if it can be said that what was or was not done by the defendant's attorney for his client made the proceedings a farce and a mockery of justice, shocking to the conscience of the Court, can a charge of inadequate legal representation prevail."

■■ Petitioner attempts to get under the holding of Escobedo v. State of

Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), but *Escobedo* is not applicable to the facts of this case since petitioner did not make any confession or other extra-judicial statements which were subsequently used against him at his trial, and for the purpose of this writ it is immaterial that he did not have counsel during the interrogation.

■ Petitioner also claims that he was denied the right of counsel at the coroner's inquest held the day of his arrest. The cases of White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193 (1963) and Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961) are not applicable because in North Carolina the coroner's inquest or preliminary hearing are not "critical stages" so as to require that the defendant be represented by counsel. Neither the absence of counsel, nor the lack of an opportunity to confront his accusers can be complained of on a petition for a writ of habeas corpus since under North Carolina law this was not a "critical stage"

of the proceedings. Patrick v. Rundle, 248 F.Supp. 757 (E.D.Penn.1965).

■ Petitioner cannot complain that he did not get a speedy trial since this Court has found as a fact that the petitioner consented to his trial being continued and he has not alleged that the delay in his trial prejudiced him in any way or made his defense more difficult. As previously stated, the petitioner waived this defect, if any, by his voluntary plea of guilty. Cerniglia v. United States, 230 F.Supp. 932 (N.D.Ill.1964).

From an examination of the transcript of the Post-Conviction Hearing, it is apparent that petitioner is entitled to no relief. See Mullen v. Boslow, No. 10,850–4th Cir. Decided August 24, 1966.

### ORDER

Therefore, it is ordered that the petition for a writ of habeas corpus be, and the same is hereby denied.

It is further ordered that the respondent's Motion to Dismiss be, and the same is hereby allowed.