**Freddie Lee GRANT, Petitioner,**

v.

**Harold R. SWENSON, Warden, Missouri State Penitentiary, Respondent.**

**No. S70 C 8.**

United States District Court,
E. D. Missouri,
Southeastern Division.

May 4, 1970.

Freddie Lee Grant, pro se.

John C. Danforth, Atty. Gen., Kenneth M. Romines, Asst. Atty. Gen., Jefferson City, Mo., for respondent.

### MEMORANDUM OPINION AND ORDER

HARPER, Chief Judge.

Petitioner, presently confined in the Missouri State Penitentiary at Jefferson City, Missouri, has previously requested leave to proceed in forma pauperis and filed a petition for writ of habeas corpus pursuant to 28 U.S.C.A. § 2254 in the United States District Court for the Western District of Missouri, and the same has been transferred to this court. A show cause order was issued on March 6, 1970. The state of Missouri has responded. Leave to proceed in forma pauperis is granted.

The petitioner was convicted by a jury, after a plea of not guilty, of the offense of forcible rape on June 13, 1962, in the Circuit Court of New Madrid County, Missouri. The court found that petitioner had been convicted of four prior felonies and pursuant to the Habitual Criminal Act assessed the punishment at 99 years imprisonment. No appeal was taken.

Petitioner filed a motion under Missouri Supreme Court Rule 27.26 V.A.M. R., to vacate the sentence and judgment, which was heard, submitted, and overruled on September 10, 1963. Petitioner

appealed to the Missouri Supreme Court and the order overruling the 27.26 motion was reversed and remanded. State v. Grant, 380 S.W.2d 799 (Mo.1964). The cause was remanded with directions to set aside the imposition of sentence and rendition of judgment on June 13, 1962, and to grant petitioner allocution and, if no legal cause be shown, to sentence him and render final judgment. Pursuant to this mandate, the previous entry was set aside on September 22, 1964, and petitioner was granted allocution and was sentenced to a term of 99 years imprisonment with credit for the time spent in prison from June 13, 1962. From this sentence and judgment, petitioner appealed, and the Missouri Supreme Court affirmed. State v. Grant, 394 S.W.2d 285 (Mo.1965). Petitioner is currently serving this sentence.

Thereafter, petitioner filed a motion under Missouri Supreme Court Rule 27.-26 to vacate and set aside the sentence entered September 22, 1964. An evidentiary hearing was held in the Circuit Court of New Madrid County on November 26, 1968, and the motion was overruled. On appeal from the order overruling the motion to vacate, the Missouri Supreme Court affirmed. Grant v. State, 446 S.W.2d 620 (Mo.1969).

Petitioner states three grounds in support of his motion under 28 U.S.C.A. § 2254: 1) That he was denied due process in that the confrontation conducted in his case at the time of his arrest was so unnecessarily suggestive and conducive to irreparable mistaken identification as to "taint" the subsequent line-up and in-court identifications; 2) that he was never granted proper allocution; and 3) that the New Madrid County assistant prosecuting attorney was also acting as a Magistrate Court clerk during the prosecution of this case and was thus debarred by statute from prosecuting the case.

An examination of the record in this case discloses that petitioner has exhausted his remedies available in the state courts of Missouri with respect to the first two grounds asserted in his petition; and further discloses that petitioner has not exhausted his available state remedies with respect to his third ground. However, in "Petitioner's Traverse to the Response to Order to Show Cause", the petitioner waives and "forever abandons" his "Contention No. 3, the allegation that the New Madrid County prosecutor was acting also as a Clerk, debarring him from further prosecution of this case."

Petitioner contends that the court's failure to grant allocution in the first instance (June 13, 1962) deprived him of his right to appeal and prevented him from filing a valid motion for new trial and a "number of other rights" which could not be restored by later granting proper allocution. There is no dispute as to the fact that petitioner was granted allocution on September 22, 1964. Petitioner's contention is that a subsequent granting of proper allocution is not a proper remedy for failure to grant allocution—that only a new trial or release would be a proper remedy. Petitioner's contention is totally without merit.

■■ Habeas corpus is a civil remedy which tests the legality of the petitioner's detention. The remedy is justified when the petitioner is in custody in violation of the Constitution or laws of the United States. 28 U.S.C.A. § 2241(c)(3). The trial court's failure to grant allocution is not error of character or magnitude cognizable under a writ of habeas corpus; and, in the absence of aggravating circumstances, does not constitute a denial of constitutional right or even raise a federal question. See, e. g., Ellis v. New Jersey, 282 F.Supp. 298 (D.C.N.J.1967); Tuggle v. Oklahoma, 275 F.Supp. 653 (D.C.Okla.1967). For a similar result under 28 U.S.C.A. § 2255, see, Hill v. United States, 368 U.S. 424, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Machibroda v. United States, 368 U.S. 487, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Bone v. United States, 351 F.2d 11 (8th Cir. 1965); Williams v. United States, 344 F.2d 264 (8th Cir. 1965), cert. den.

382 U.S. 857, 86 S.Ct. 112, 15 L.d.2d 95; Robins v. United States, 402 F.2d 470 (7th Cir. 1968); Feeney v. United States, 392 F.2d 541 (1st Cir. 1968).

■ After petitioner was granted allocution on September 22, 1964, and sentence imposed, he had the right to take an appeal within ten days after the judgment became final. In fact, petitioner did appeal. The Missouri Supreme Court reviewed the alleged errors at trial and affirmed the conviction and sentence (394 S.W.2d 285). The record belies petitioner's claim that he was denied a right to appeal. Similarly, petitioner's claim that he was also prevented from filing a valid motion for a new trial is contrary to the facts. Petitioner did file a valid motion for a new trial (380 S.W.2d 799, 803).

■ There is no justification in the record for the granting of a new trial on the basis of the trial court's failure to grant allocution in the first instance, and the court finds no authority in the law for the petitioner's contention that proper allocution was an inadequate remedy.

Petitioner's primary contention, consistent with Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), is that the confrontation conducted at the time of his arrest was so unnecessarily suggestive and conducive to irreparable mistaken identity that he was denied the due process of the law. This same issue has been considered by the trial court in petitioner's most recent 27.26 hearing, and by the Missouri Supreme Court on appeal from the order overruling the motion. In each instance, the constitutionality and validity of the identification was upheld. The facts are fully set out in State v. Grant, 446 S.W. 2d 620 (Mo.1969) and for the most part will not be repeated here. The facts are not in dispute.

■ A careful examination of the transcript of the hearing before the Circuit Court indicates that petitioner was accorded a full and fair hearing on the issue and confirms the Missouri Supreme Court opinion affirming the denial of the motion to vacate sentence. The very thorough opinion of the Missouri Supreme Court discloses the relevant facts and specifically and properly applied the applicable federal constitutional standards. No hearing is necessary.

Petitioner was shown to the victim in a face-to-face confrontation without a line-up in the victim's home within an hour after the rape. Petitioner was the only Negro present. Both the rape and the confrontation occurred at the victim's farm house.

The victim had given a description of her assailant to the officers who arrested petitioner on a farm less than two miles from the victim's residence. The description included that of a certain type of jacket. When the victim first saw the petitioner after his arrest she positively identified the petitioner although he was not wearing the jacket. When asked about the jacket, petitioner said he left it in a field. He accompanied the officers to a field about 500 feet from where he was arrested where they recovered the jacket described by the victim. The victim was taken to the hospital for examination and treatment. Later that day, the victim positively identified the petitioner in a line-up with two other Negro men, none of whom was wearing the jacket. At trial, the victim again positively identified the petitioner as her assailant. The record in the present case reveals that the confrontation was not violative of due process, and further fails to show that the victim's in-court identification was based on the confrontation.

The Missouri Supreme Court stated, pages 621–622,

"A heinous crime had been committed. The officers had the responsibility of ascertaining the identity of the criminal. Their attention having been directed to appellant, and he having been taken into custody, it was important in those early moments of the investigation that he either be detained as the suspect or released and the in-

vestigation continued without interruption in the effort to identify and find the attacker. Hence there was a practical necessity of taking the arrested suspect immediately before the victim, who was about to be taken to the hospital (and therefore apparently unable at that time to accompany the officers to the police station for the conduct of a lineup). The victim was 'the only person in the world who could possibly exonerate [Grant]. Her words, and only her words, "He is not the man" could have resulted in freedom for [Grant].' (Paraphrasing 388 U.S., l.c. 302, 87 S.Ct. 1967.) An on-the-spot, one-to-one confrontation was the only practical procedure under the circumstances. In the totality of the circumstances there was no unfairness or unnecessary risking of irreparable mistaken identification."

■ While such confrontations are not encouraged, there is nothing in this record to indicate that this confrontation was conducive to mistaken identification. There are several facts which disclose that the identification was accurate and reliable. The victim had seen petitioner in daylight for the entire period of time that he had appeared at her door, asked for a drink of water, and received it. He was in her immediate view while she was trying to resist petitioner, and while he forcibly undressed her and undressed himself. He was in her close view while he was performing the act of sexual intercourse. The jacket described by the victim matched the one recovered with the aid of petitioner.

At all times, the victim identified petitioner without hesitation and unequivocally. With respect to the two identifications subsequent to the confrontation, the Missouri Supreme Court stated at 446 S.W.2d page 622:

"* * * When asked at the trial about the certainty of her identification she said, 'Do you think you could go through a thing like that and not * * * remember what someone looked like * * * not remember

the face? I don't believe nobody could.' * * * Before the lineup the officers made no suggestions to her as to which of the three was Grant. Nothing was said to her except that she should take her time and be sure that the one she identified was the right one."

The totality of the circumstances in the present case do not show a violation of due process. Accordingly, the relief requested by petitioner is denied.

It is, therefore, ordered that the petition for writ of habeas corpus be dismissed.